WELLS WATSON AND LINDA WATSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Watson v. Commissioner
Docket No. 5211-76.
United States Tax Court
T.C. Memo 1978-201; 1978 Tax Ct. Memo LEXIS 317; 37 T.C.M. (CCH) 857; T.C.M. (RIA) 780201; May 31, 1978, Filed Hugh O. Mussina, for the petitioners. Suzanne B. O'Neill, for the respondent. MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1972
$ 598.63
1973
2,514.64
1974
1,451.43 The sole issue for decision is whether $30,000 paid by petitioners in 1972 in connection with the purchase of Kelley Gras Company can be amortized pursuant to section 167. [1] Petitioners claimed deductions for amortization of $2,500, $10,000 and $10,000 in 1972, 1973 and 1974, respectively. FINDINGS OF FACT *318 Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, Wells and Linda Watson were residents of Arlington, Texas. Linda is a party only by virtue of having filed joint returns with her husband. When we hereafter refer to petitioner, we will be referring to Wells. In October 1972, petitioner purchased from Danny LeRoy Kelley a business known as the Kelley Grass Company ("Kelley Grass"). The purchase price of $45,000 was allocated in the Purchase Agreement as follows: Goodwill
$30,000
Equipment
12,500
Restrictive Covenant
2,500
TOTAL
$45,000 Petitioner paid $13,000 cash and signed a promissory note for $32,000 payable in six semi-annual installments; the equipment sold was pledged as security for the note. The Agreement contained a restrictive covenant under which Mr. Kelley agreed not to engage in any business in competition with Kelley Grass for a period of three years. Petitioner also acquired the exclusive right to use the name "Kelley Grass Company" for a period of three years, after which time the right to use the name became nonexclusive. At the time petitioner purchased Kelley *319 Grass, it was located at 3008 East Abram in Arlington, Texas. Kelley Grass had a month-to-month lease on that location. Several months after he purchased Kelley Grass, petitioner moved the business approximately 11 miles to 2412 South Cooper Street in Arlington because he believed that the new location would be better for business. Petitioner continued to use the name "Kelley Grass Company" at the new location until three years elapsed, at which time he changed the name to Arlington Grass Company. At the time he purchased Kelley Grass, petitioner thought that there might be a benefit to using the name "Kelley Grass Company." Also, his purchase money note was secured by the equipment he bought with the business and the trucks had "Kelley Grass Company" painted on them and he did not want to remove the name until he had paid for the business. Kelley Grass sold sod to both "retail" and "wholesale" customers. Approximately 80% of the customers were "retail" customers and 20% were "wholesale" customers. Petitioner considered "retail" customers those individuals who purchased sod only once and not for resale, while "wholesale" customers were individuals or firms that purchased sod *320 more than once, often for resale (for example, builders and landscape architects). The grass business is cyclical in Texas. Sales of sod occur from March to October. In the first summer season after petitioner bought the business in October 1972, petitioner had 41 "wholesale" customers. Most of them were "wholesale" customers who had been patronizing Kelley Grass before petitioner purchased it. Petitioner was still doing business with at least seven of these "wholesale" sod purchasers in 1976. In addition, petitioner retained the services of one employee (a laborer) when he purchased the business, and that employee still works for petitioner. On his income tax returns for the years in issue, petitioner claimed a deduction for amortization of the "trade name" which he alleged he had purchased for $30,000. Petitioner determined that the "trade name" had a useful life of three years, and he amortized its cost accordingly. In the statutory notice, respondent determined that petitioner was not entitled to the claimed amortization deductions since the $30,000 was for the purchase of goodwill or other intangibles with an indeterminate life. OPINION The sole issue for decision *321 is whether $30,000 of the $45,000 paid by petitioner in 1972 in connection with his purchase of the Kelley Grass Company can be amortized under section 167. Section 167(a) provides, in general, that a deduction is allowed for the exhaustion, wear and tear of property used either in a trade or business or held for the production of income. Section 1.167(a)-3, Income Tax Regs., states the following with respect to the depreciation of intangible assets: If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copy-rights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to good will. Petitioner paid $45,000 in connection with his purchase of a going business. Of that amount, *322 $12,500 was allocated in the Purchase Agreement to equipment, $2,500 to the covenant not to compete, and $30,000 to goodwill. Clearly, if the $30,000 petitioner seeks to amortize over three years is for goodwill, he is not entitled to depreciate it. X-Pando Corporation v. Commissioner,7 T.C. 48, 53 (1946); Bills Bros. Memorial Corp. v. Commissioner,7 B.T.A. 1182 (1927), appeal dismissed 41 F. 2d 988 (10th Cir. 1930); section 1.167(a)-3, Income Tax Regs., supra.
Petitioner has not shown that the $30,000 was paid for other than goodwill. Goodwill is "nothing more than the probability that the old customers will resort to the old place" or it is "all that good disposition which customers entertain towards the house of business, identified by the particular name or firm, and which may induce them to continue giving their custom to it" or it is "any privilege that gives a reasonable expectancy of preference in the race of competition. * * * Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers" or it is "an opportunity to succeed to the advantageous position *323 of [a] predecessor." [Footnotes omitted.] Brooks v. Commissioner,36 T.C. 1128, 1133 (1961), citing Watson v. Commissioner,35 T.C. 203, 213 (1960), appeal dismissed by stipulation (4th Cir. July 20, 1961). Here petitioner was entitled to take over his predecessor's place of business. In fact he moved the business several months after he purchased it. He had the exclusive right for three years to use the name "Kelley Grass Company," and he did use it for three years. Apparently this was primarily because he didn't want to paint out that name on the trucks he bought with the business until the purchase price had been paid in full--at the end of three years.Most of the business's customers (80%) were the drop-in type who could not be expected to purchase sod more than once.Only a few builders and landscape architects (20% of the customers) represented repeat customers. About a fifth of these customers who patronized Kelley Grass when petitioner purchased it was still with petitioner at the end of three years. We assume this is because they were satisfied with petitioner's product and service. There is no indication that the name "Kelley *324 Grass Company" had much, if any, value to petitioner. He has not shown that he paid $30,000 for other than general goodwill, and any value attributable to the name alone is so intertwined with goodwill as to be inseparable. As the Fifth Circuit said in Winn-Dixie Montgomery, Inc. v. United States,444 F. 2d 677, 681 (1971): [Goodwill] is acquired by the purchaser of a going concern where the "transfer enables the purchaser to step into the shoes of the seller." * * * We have also said that goodwill is transferred where, as here, the buyer continues the seller's business uninterrupted, using primarily the seller's employees, and utilizing the seller's name. [Citations omitted.] Moreover, the parties allocated $30,000 to goodwill and nothing to the trade name. It is well-settled that at least where there is no strong proof to disturb the allocation put upon the purchase price by the parties, where they act with adverse tax interests, the allocation they made will normally not be disturbed. Ullman v. Commissioner,264 F. 2d 305 (2d Cir., 1959). We conclude that petitioner paid $30,000 for goodwill which he is not entitled to amortize. *325 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩