**CONSOLIDATED APPAREL CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10813.

United States Court of Appeals, Seventh Circuit.

Oct. 23, 1953.

Joseph E. Rapkin, Maurice Weinstein, Milwaukee, Wis. (Fairchild, Foley & Sammond, Milwaukee, Wis. of counsel), for petitioner.

H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Ellis N. Slack, Hilbert P. Zarky, I. Henry Kutz, Sp. Assts. to the Atty. Gen., Washington, D. C., for respondent.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The Tax Court, in 17 T.C. 1570, approved the refusal of the Commissioner to allow as deductions annual rentals paid by the taxpayer in each of the taxable years 1945 and 1946 in excess of $22,500, on the ground that nothing over and above that amount was "required" to be paid, as provided by Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. It held also that $37,500, plus the amounts placed in the pension fund for his benefit, was a reasonable annual salary for the services actually performed in each of the taxable years 1944, 1945 and 1946, by Harry LeVine, president and general manager, and that any and all sums paid him over and above that amount were improperly deducted. The only issue presented to us is whether these two determinations are correct.

The petitioner corporation has conducted a ladies' and children's ready-to-wear clothing store in Milwaukee, Wisconsin, since 1932. Its sales in the year ending August 31, 1932 amounted to $364,590.07, and in the year ending July 31, 1946, $1,627,255.45. In the intervening years it experienced an ever continuing increase in sales and profits. Roughly speaking, some two-thirds of its capital stock, either directly or by way of beneficial interest, belonged to Harry LeVine, his wife and his three sons. The remaining one-third was owned of record or beneficially principally by Ida Leubusher, who was not related to the LeVines. She was formerly the wife of A. P. Rosenberg, deceased, who in turn was a brother of Benjamin Rosenberg, who was married to a sister of Harry LeVine. The minority stockholders were represented on the Board of Directors by Aaron Scheinfeld, who served also as secretary of the corporation.

The taxpayer occupied premises at the northwest corner of North Third Street and West North Avenue, an important retail area in Milwaukee. In 1932 the property was leased for ten years from Third-North Realty Company, in which none of the stockholders of the petitioner was in anywise interested, for a rental of 3% of petitioner's sales, with a minimum of $18,000. Prior to expiration of this lease, petitioner negotiated for its renewal. The lessor declined to execute a new contract upon which the rental would be measured by a percentage of the sales, but was willing to and did enter into one for ten years, commencing September 1, 1942, calling for a fixed annual rental of $22,000. As a matter of fact, the lessee was the Consolidated Mercantile Company, which was owned by petitioner's stockholders and which subleased to petitioner for $22,500 annually.

In 1944 petitioner, having learned that the Third-North Realty Company might be willing to sell the property, entered into negotiations looking to its acquisition. Having come to terms with the vendor, LeVine, instead of buying the property himself, created an irrevocable trust, the beneficiaries of which were his wife and sons and in which Saltzstein, who is not related to LeVine or his family but who had been LeVine's attorney, was named trustee. The corpus of the trust consisted of some $185,000 in cash, made up of contributions of $75,000 by Harry LeVine and the proceeds of a mortgage bond issue. Armed with these assets, the trustee, who was subject to no control by the taxpayer or any one else, purchased the property in May, 1944.

At that time petitioner was contemplating an expansion program, calling for extensive remodeling, the cost of which the taxpayer would be compelled to assume. The minority stockholders, learning of the trustee's purchase of the premises, approached petitioner respecting the possibility of obtaining a long-term lease from the trust. Scheinfeld, representative of the minority interest, and Scribner, petitioner's accountant, carried on negotiations with the trustee which resulted in a proposal for a new contract to run for twenty-five years, calling for a rental of 3% of the gross sales, with a minimum of $30,000 per year. LeVine consulted independent real estate experts as to the reasonableness of the proposed rental and was convinced that a rental of 3% of gross sales, with a $30,000 minimum, was fair and reasonable. The trustee, however, held out for 4% until October 20, 1944, when he and petitioner came to agreement whereby the then existing lease, which had eight years to run, was cancelled and a new one executed, running twenty-five years from August 1, 1944, providing for a rental of 3% of sales, with a minimum of $30,000. The new lease gave to petitioner also a twenty-five-year option to rent one or more of the three upper floors of the building on a similar basis. The taxpayer exercised the option on all three floors in 1947, utilizing for itself the second and third, and subleasing the fourth at a substantial profit. Following execution of the lease, the taxpayer made improvements costing $200,000.

Petitioner paid rental to the trustee in the two years, 1945–1946, in the respective amounts of $49,972.31 and $59,758.33, calculated at 3% of its gross sales, which, in its tax returns, it deducted as rentals. In a deficiency notice, the Commissioner challenged the propriety of the deductions in so far as the percentage was applied to sales made on premises contiguous to those covered by the 1944 lease. Under this contention, if his position had been sustained, the deductions would have been reduced to $28,370.36 in 1945 and $34,810.16 in 1946. However, just prior to trial, respondent abandoned this position and pleaded affirmatively that rental deductions were allowable only to the extent of $22,500, the annual rental paid by petitioner during the existence of the prior 1942 lease. This defense was sustained by the court, which held that to the extent the rentals paid exceeded $22,500 in each year they were not "required" to be paid.

Under Section 23(a) (1) (A) of the Internal Revenue Code, deductions from gross income may include all the ordinary and necessary expenses incurred in carrying on trade or business including "rentals * * * required to be made as a condition to the continued use or possession," for business purposes, of property which the taxpayer leases. Consequently the ultimate question here in this respect is whether the payments made by petitioner and actually deducted by it were rentals required to be made as a condition to the use and possession of the premises.

At the outset we should observe that, inasmuch as the lease provided for rentals of 3% of the sales, deductions of those amounts were, literally, by the terms of the lease, required to be paid. Prima facie, they were within the statute, being both necessary and required to be paid, for the taxpayer, by its lease, was legally obliged to make them. But the Commissioner contended and the Tax Court held that, in view of the fact that the previously existing lease had eight years to run and had been superseded by a lease made by the trust, the beneficiaries of which were the wife and children of the president and general manager of the taxpayer, the parties did not deal at arm's length and that, as a consequence, the rentals provided in the new lease, insofar as they exceeded $22,500, were not required to be paid. This amounts to an implicit holding that the lease by the trustee to the taxpayer was a mere pretense which should be ignored. Otherwise, under the plain terms of the agreement, the rentals were required. Though the Tax Court did not hold that the superseding lease was a subterfuge, it reasoned that, in view of the fact that petitioner, under the ten-year lease, had a right to continue as tenant for eight years yet to run at a rental of $22,500, nothing above that amount was required to be paid. It gave no effect to the fact that the prior lease had, for a valuable consideration, been cancelled and a new one executed, yet refrained from holding the latter to be invalid. It said expressly that no question of reasonableness was involved and that the decisive point was that the taxpayer was required under its superseded lease to pay only $22,500.

Of course, tax laws deal with realities. They do not authorize collusion resulting in violation of the statutes. But before a court can declare a contract to be a collusive subterfuge, there must be evidence to sustain that finding, or its equivalent. We do not think the present record justified the Tax Court or will justify us in ignoring the binding effect of the existing lease. The evidence discloses nothing negating the irrevocable character of the trust, which purchased the property and in turn leased it to the taxpayer. The trustee, a member of the bar, a member of the bar and a man of repute, was not subject to the control of LeVine or of anybody else concerned in petitioner's affairs. It was his duty to demand and receive a rental consistent with what he thought was proper protection of his beneficiaries. The minority stockholders were anxious to continue and extend the prosperous business. The petitioner hoped to increase that business and was planning to expend large sums in remodeling the premises to meet the demands of its enlarged activities, and, though it had a lease which had eight years to run at a rental of $22,500, that term was insufficient to protect or justify substantial broadening of operation and extensive expenditure of money for improvements. The minority was anxious that the lease be extended for sufficient time to justify capital expenditures and to protect the proposed enlargement and expansion of the business. The plans for improvement envisaged the possible use of additional room, that is the second, third and fourth floors of the building. For these petitioner had no lease. In this situation, the minority stockholders' representative, plaintiff's accountant and the trustee entered into negotiations, eventually joined in by LeVine, as a result of which the trustee modified his demand of 4%

of sales and agreed to make a lease for twenty-five years for a minimum rental of $30,000, the actual rental to be based on 3% of the sales, and, as desired by petitioner and all its stockholders, gave the taxpayer an option to occupy the second, third and fourth floors, of which, shortly afterwards, the petitioner took advantage.

Thus, it will be seen that petitioner did not, without reason and without consideration, surrender an existing valid lease, but that it gave up one with eight years to run, in consideration of receiving one to run twenty-five years made on the same terms as the original lease of 1932, at 3% of sales and, as additional consideration, obtained the right to and did rent the second, third and fourth floors of the building at a specific rental. There is nothing in this record to sustain a finding that the parties dealt in any manner other than fairly. On one side was an independent trustee, subject to no one's control, who was authorized to act at his own discretion. On the other, was petitioner, including LeVine and his family and the minority stockholders, all of whom were looking to a successful continuation and expansion of operations.

Whether the rental was reasonable or not, the Tax Court did not decide, but it seems to us that such an inquiry is not irrelevant in determining whether the new lease was valid or whether it was an evasion which the Commissioner or the Tax Court could ignore. Undisputed evidence as to the reasonableness of the rental by competent expert witnesses appears in the record.

We think the circumstances in favor of the taxpayer here are of greater moment than they were in Skemp v. Commissioner, 7 Cir., 168 F.2d 598, where we pointed out that, in view of the creation of a valid irrevocable trust, an agreement to pay a reasonable rental could not, in the absence of evidence invalidating the agreement, justify disallowance of deduction of the rentals. To the same effect is Brown v. Commissioner, 3 Cir., 180 F.2d 926. We think the

evidence is conclusive that the decision to make the new contract was one based on sound business judgment and honest determination, our interference with which nothing in this record justifies. Welch v. Helvering, 290 U.S. 111, 54 S. Ct. 8, 78 L.Ed. 212. We conclude that the finding that the rentals paid and sought to be deducted were not required to be paid within the meaning of the statute is clearly erroneous.

■■ There remains for determination the further question of the propriety of the Tax Court's decision that a reasonable allowance for compensation to LeVine did not exceed $37,500, in addition to pension trust benefits. Section 23(a) (1) (A) of the Internal Revenue Code permits deduction of a reasonable amount for salaries or other compensation for services actually rendered. Section 29.23(a)–6(3) of Regulations 111 provides that the test of deductibility is whether the compensation payments are reasonable and are in fact payment for services. Of course, whether a salary is reasonable is a question of fact. R. H. Oswald Co. v. Commissioner, 7 Cir., 185 F.2d 6, certiorari denied 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687; Clinton Co. v. Commissioner, 7 Cir., 159 F.2d 102, and we may not reverse the fact-trier's finding unless it is clearly erroneous. In the present case the Tax Court heard all the testimony and, upon considering it and all the circumstances in evidence, which we think it unnecessary to discuss, found that the allowance of $37,500, plus contributions to the pension fund, was all that could properly be deducted in the way of reasonable compensation. There having been adequate substantial evidence to support the finding, we can not say that it is clearly erroneous.

We reverse the decision of the Tax Court insofar as it refused to allow the rental deductions claimed by petitioner i. e. $49,972.31 in 1945 and $59,758.33 in 1946. We affirm that part of the judgment approving the disallowance of compensation to LeVine in excess of $37,500 per year, plus the pension fund as shown by the record.