ALBERT VAN LUIT CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Albert Van Luit Co. v. Commissioner
Docket No. 4856-73.
United States Tax Court
T.C. Memo 1975-56; 1975 Tax Ct. Memo LEXIS 315; 34 T.C.M. (CCH) 321; T.C.M. (RIA) 750056; March 13, 1975, Filed Don M. Pearson and Daniel J. Clinton, Jr., for the petitioner. Jeffrey C. Kahn, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for 1969 and 1970 in the amounts of $ 73,963.29 and $ 34,028.68, respectively. The only issue for decision is the reasonableness of compensation paid by petitioner to its chief executive and major shareholder. FINDINGS OF FACT Petitioner is a corporation with its principal offices and place of business in Los Angeles, California. Petitioner keeps its books and records, and reports its income using the accrual *316 method of accounting and a calendar year basis. In 1940, Joseph Cannell, North Baker, and Albert Van Luit (hereinafter Van Luit) formed a partnership for the purpose of producing wallpaper. Joseph Cannell and North Baker contributed $ 2,500 each to the partnership, and Van Luit contributed his sole proprietorship. In 1945, the partnership was incorporated under the name of Albert Van Luit Co., Inc. The shareholders and the percentage of shares owned were: Albert Van Luit
50 percent
Joseph Cannell
25 percent
North Baker
25 percent
From the date of incorporation until March 10, 1969, these three shareholders comprised petitioner's board of directors. Commencing on March 10, 1969, Daniel J. Clinton, Sr., served as the fourth member of the board of directors. Van Luit was not related by blood or marriage to any of the members of the board. Van Luit died on May 28, 1970, at the age of 72. During the taxable years at issue until Van Luit's death, petitioner's officers were: Name
Title
Albert Van Luit
President and chief
executive officer
Joseph Cannell
Vice president
Daniel J. Clinton, Sr.
Secretary
North Baker
Treasurer
Petitioner *317 manufactured and distributed wallpaper of a superior quality. Van Luit was responsible for petitioner's successful operation at every level. Van Luit became involved in the wall-covering business at age 14. He began in a part-time job in a retail wallpaper store in Cleveland, Ohio. His employer sold high-quality wall coverings imported from France and England. After high school, Van Luit attended art school for a more formal education in interior design. In 1935, Van Luit moved to California and opened a sole proprietorship to manufacture wallpaper. As stated above, in 1940 he contributed the assets of the proprietorship to the partnership owned by Van Luit, Joseph Cannell, and North Baker, and the partnership was incorporated in 1945. Van Luit's was the guiding genius behind the enormous success of petitioner's business. He contributed to every aspect of the business, including promotion, distribution, production, design, and color. For promotional purposes, Van Luit conceived of displaying petitioner's wall coverings on specially designed multiplex "wings." This method, the best for displaying the product to the consumer, was later adopted by many manufacturers in the wall-covering *318 industry. In the mid-1940's, Van Luit utilized advanced photographic techniques to develop miniatures of the "scenic" style wallpaper manufactured by petitioner. "Scenics" consist of 27-inch-wide panels of wallpaper which recreate an entire scene. The miniaturization process enabled the prospective customer to view the entire scene as it would appear in the home. The process is complicated, and requires adjustments to color in order to cure distortions and fairly depict the full-size scene. Early in petitioner's history, Van Luit established a revolutionary distribution system. As opposed to marketing high-quality wallpaper through interior designers, Van Luit conceived the idea of marketing his product through retail outlets. Due to Van Luit's experience and extensive travel, he knew many wallpaper dealers and was thus able to establish a distribution system which still exists today. Van Luit also instituted a program of quality control which enabled petitioner to guarantee relatively consistent color for bolts of wallpaper produced at different times. These promotional and marketing innovations advanced petitioner's position in the wall-covering industry and were key factors *319 in petitioner's high sales volume and high profit margin. In the area of production, Van Luit was instrumental in bringing about significant developments in petitioner's techniques. Beginning in 1951, Van Luit worked with an engineer, John Bruce, to develop a revolutionary silk-screening process which utilized drying ovens in place of the older air-drying method which required a great deal of space and labor. The Van Luit process permitted the paper to move past a stationary silk screen whereas, previously, the screen had been moved along the paper. This innovation permitted, for the first time, mass production of silk screen wall coverings. The most significant production technique introduced by Van Luit involved the use of a photographic process which enabled any desired background to be printed on wall-covering material. A scene is then printed on this background. Prior to the development of this process only one wall in a room would be covered by wallpaper. The remaining walls were painted to match the color of the "scenic." The new technique substantially increased petitioner's sales because it permitted the consumer to have one wall of "scenic," and the other three walls *320 covered in a complimentary background paper. In addition, the complexity of the background prevented imitations by others in the industry, thus assuring the unique quality and market position of the Van Luit product. In 1969, Van Luit caused petitioner to commence studies in design and engineering with a view to installing a Kidder Press. The petitioner ultimately purchased such a press, with design and color production modifications caused by Van Luit's work. The Kidder Press enabled petitioner to vastly increase its volume by doubling its manufacturing capacity. Van Luit's greatest contributions to petitioner were in the areas of design and color. He possessed a genius for determining commercially salable design and color combinations. Van Luit worked with designers to achieve the desired effects, and had complete control over the final decisions on color. The end product of Van Luit's supervision was so unique as to be instantly recognizable in the industry as the "Van Luit touch." This unique quality is reflected in the unusual longevity of Van Luit designs. Most members of the industry produce a new book of samples on a 2-year cycle. While petitioner also produces new selections *321 every 2 to 3 years, its sample books continue to be commercially viable for up to 12 years. Van Luit's special talent in this respect made his name synonymous with fine quality and workmanship in the wall-covering industry. In recognition of Van Luit's contributions, the interior design industry presented Van Luit the Justin P. Allman award in 1962. In addition to the above-described notable achievements, Van Luit was responsible for the day-to-day administration of the business, including sales, promotion, etc. Because of his 35 years experience, he was personally a significant sales factor for petitioner. He knew many people in the wall-covering industry and never lost touch with the interior designers who created much of petitioner's business. Van Luit devoted nearly all of his time to the business, often working 7 days a week. His home was on property adjacent to the factory and was often used for meetings and entertainment of industry clients and business associates. During the tax years at issue the salaries paid to the shareholder-employees were as follows: 1969
1970
Albert Van Luit
$ 195,811.72
$ 94,164.26 (until 5/28/70)
Joseph Cannell
21,900.00
26,200.00
North Baker
19,500.00
23,200.00
*322 Petitioner's sales, taxable income, taxes paid, salaries paid to Van Luit and other shareholder-employees, dividends distributed, and net worth for 1960 through 1972 are as follows: Compensation
Calendar
Taxable
Federal
Paid to
Year
Gross Sales
Income
Income Tax
A. Van Luit
1960
1,886,770.57
115,670.76
54,338.18
70,168.15
1961
1,862,805.20
122,662.52
58,284. 51
72,201.67
1962
1,949,780.56
125,453.25
59,609.26
73,463.91
1963
2,193,674.74
235,223.57
114,678.73
122,529.37
1964
2,566,009.47
190,505.1 6
85,440.32
106,873.84
1965
2,799,443.61
320,834.29
145,515.94
162,161.74
1966
2,963,440.76
238,110.66
101,775.42
128,575.96
1967
3,064,375.31
224,332.85
99,923.90
121,643.73
1968
3,584,112.13
341,479 .13
170,069.52
175,146.60
1969
3,901,135.41
372,085.96
188,644.16
195,811.72
1970
3,903,439.47
452,660.49
216,046.47
94,164.26 [1]
Compensation
Paid to D.J.
Clinton, Sr.
1970
3,903,439.47
452,660.49
216,046.47
29,250.00 [2]
1971
4,596,347.46
624,695.62
292,217.95
94,576.32
1972
5,750,830.34
823,296.19
357,469.98
124,428.02
Compensation
to Other
Company Net Worth
Calendar
Shareholder-
Cash
(Capital Stock and
Year
Employees
Dividends
Retained Earnings)
1960
19,400.00
0.00
775,148.81
1961
19,400.00
0.00
839,526.82
1962
19,400.00
0.00
905,43 7.90
1963
23,400.00
0.00
1,023,845.21
1964
26,400.00
15,000.00
1,116,577.04
1965
26, 400.00
15,000.00
1,397,230.62
1966
26,400.00
15,000.00
1,397,230. 62
1967
26,400.00
15,000.00
1,506,639.57
1968
30,900.00
15,000.00
1,643,216.14
1969
41,400.00
10,000.00
1,814,690.23
1970
20,026.76 [1]
0.00
2,046,119.88
1970
29,373.24 [2]
0.00
2,046,119.88
1971
73,450.84
0.00
1,859,669.66 [3]
1972
93,352.00
0.00
2,304,593.69
*323 Van Luit received a base salary plus 30 percent of the net profits of petitioner. This compensation was a formula established by the partnership, and later adopted by the corporation in 1946. In the years at issue, the base salary he received was $ 27,500. The arrangement was reviewed periodically by the board of directors, but was never changed. The members of the board agreed that Van Luit was entitled to the compensation payable under the formula. In addition to this compensation, Van Luit received $ 100 per month from petitioner for expenses. Petitioner did not provide him with a car or any other corporate amenities. Van Luit did not participate in any pension or profit-sharing plan. Petitioner deducted the compensation paid to Van Luit on its 1969 and 1970 Federal income tax returns. Respondent determined that the compensation paid to Van Luit was excessive by the amounts of $ 135,812 for 1969 and $ 69,164 for 1970 and disallowed the deductions to that extent in each year. ULTIMATE *324 FINDING OF FACT The compensation paid by petitioner to Van Luit in 1969 and 1970 was reasonable within the meaning of section 162(a)(1). [1]/ OPINION Section 162(a)(1) permits a corporation a deduction in computing taxable income for reasonable compensation paid to its employees. The issue of whether the amounts paid to Van Luit constituted reasonable compensation is factual, and the burden of proving reasonableness is on petitioner, Botany Mills v. United States,278 U.S. 282 (1929); Dielectric Materials Co.,57 T.C. 587, 591 (1972). Petitioner contends that the contingent compensation plan herein at issue was a long-standing policy, and the product of an arm's-length bargain between Van Luit and an independent majority of the board of directors. Moreover, the plan was in effect before any services were rendered by Van Luit. Petitioner maintains that the regulations, section 1.162-7(b)(2), [2]/ and a substantial body of case law support the reasonableness of such a compensation plan. *325 See Mayson Mfg. Co. v. Commissioner,178 F.2d 115, 120 (C.A. 6, 1949); Lewisville Investment Co.,56 T.C. 770, 781-783 (1971). The arm's-length nature of the contract, in conjunction with the remarkable contributions and service of Van Luit provide, according to petitioner, more than ample support for the reasonableness of the compensation. We agree, and hold for petitioner. *326 Van Luit was compensated pursuant to the formula adopted by the board of directors as corporate policy in 1946. The board of directors consisted of persons unrelated to Van Luit, each of whom had a substantial interest in the corporation which was adverse to Van Luit's, and Van Luit owned only 50 percent of petitioner's stock. The compensation arrangement was the product of a free bargain between petitioner and Van Luit designed to secure "on fair and advantageous terms the services of the individual." Sec. 1.162-7 (b)(2), Income Tax Regs. See Streckfus Steamers, Inc.,19 T.C. 1, 6 (1952); California Vegetable Concentrates, Inc.,10 T.C. 1158, 1166 (1948); Draper & Co.,5 T.C. 822, 839-840 (1945). Compare Consolidated Apparel Co., 17 T.C. 1570, 1579 (1952), reversed in part and affirmed in part 207 F.2d 580 (C.A. 7, 1953); Dielectric Materials Co.,supra;R. H. Oswald Co.,185 F.2d 6, 9 (C.A. 7, 1950). The fact that the payments bore no relationship to Van Luit's stockholding, and that the compensation was bargained for when petitioner was not producing large profits *327 further buttress the reasonableness of the compensation formula. See Soabar Co.,7 T.C. 89, 92 (1946). Nor do we think that petitioner's business or Van Luit's participation therein had so changed as to render the plan unreasonable as a measure of the value of his services. Cf. Pepsi-Cola Bottling Co. of Salina, Inc.,61 T.C. 564, 569 (1974), on appeal (C.A. 10, May 16, 1974). Moreover, and perhaps more significant, the compensation, apart from the bargain, was reasonable under all the circumstances. Petitioner's success was due almost exclusively to the remarkable efforts of Van Luit, which are described in detail in our Findings. In light of his past and continuing services, and his exceptional contributions to petitioner, Van Luit was entitled to substantial compensation. Dielectric Materials Co.,supra at 591; Mayson Mfg. Co. v. Commissioner,supra;Adams Tooling, Inc.,33 T.C. 65, 73 (1959), affd. 289 F.2d 554 (C.A. 7, 1961). Petitioner's phenomenal success, graphically shown in the table quoted in our Findings, was attributable almost entirely to Van Luit's guiding *328 genius--his technical and artistic abilities, his business sense, his flare for effective marketing, and his unceasing devotion to his work. We think petitioner has shown that Van Luit's compensation was reasonable. In an attempt to refute petitioner's evidence, respondent introduced expert testimony on the subject of executive compensation. While the witness possessed excellent credentials, he was not at all familiar with the wall-covering industry nor with the significance of Van Luit's contributions and innovations. Thus, we are not convinced by his testimony that Van Luit's compensation was unreasonable. We also note that respondent introduced evidence of compensation paid to chief executives of certain corporations in the industry. However, the corporations described as comparable by respondent were not nearly as financially successful as petitioner, were not headed by executives with Van Luit's talents or reputation, and were not actual competitors with Van Luit's unique product. Basing our conclusion upon all the evidence of record, we hold that the compensation paid to Van Luit for 1969 and 1970 was reasonable. To reflect the foregoing and concessions made by the parties, *329 Decision will be entered under Rule 155.
Footnotes
1. Salary for 1970 to May 28, 1970, the date of death of Albert Van Luit. ↩
2. Salary for 1970 after May 28, 1970, the date of death of Albert Van Luit. ↩
3. Stock redemption in 1971.↩
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. /Sec. 1.162-7 Compensation for personal services. (b) The test set forth in paragraph (a) of this section and its practical application may be further stated and illustrated as follows: * * * * * (2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.↩