X-PANDO CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7328.   Promulgated June 10, 1946.

*George E. Moesel, Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

49

OPINION.

KERN, *Judge*: The only question presented here is whether the respondent erred in disallowing the deduction claimed by the petitioner corporation in amortization of an account to which it had charged certain expenditures in earlier years which, it contends, were in the nature of capital expenditures. Respondent justifies his action on the ground that the items charged to the account were business expenses, deductible only in the year paid or accrued.

The items consisted of salaries, traveling expenses, rent, and advertising expenses. These, of course, are expenses of a type which are ordinarily held to be currently deductible business expenses, under the provisions of section 23 (a) of the Internal Revenue Code, which provides for the deduction of:

* * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses * * * and rentals * * *

and of section 43 of the code, which provides:

* * * The deductions and credits * * * provided for in this chapter shall be taken for the taxable year in which "paid or accrued" * * * unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

Petitioner itself recognized the basic character of the items when it deducted certain percentages of these same expenditures as current expenses during the year made. The balances, which it charged to its business development account, petitioner contends were more in the nature of capital items, because it expected to realize the benefits from that proportion of the expenditures in future years rather than currently.

Petitioner calls our attention to a number of cases in which we have expressed sympathy for the theory urged by the taxpayer, and now adopted by petitioner, that some part of abnormally large expenditures in early years which are expected to produce income in future years might be regarded as capital investments. In all such cases, we found no evidence before us from which we would determine a proper allocation between capital and current expenses.

All of the cases cited by petitioner, except *Colonial Ice Cream Co.*, 7 B. T. A. 154, and *F. E. Booth Co.*, 21 B. T. A. 148, involved the question whether the taxpayers should be allowed to include the amounts of the expenditures in question in their invested capital, and they did not involve the question whether they may be amortized and deducted from gross income in subsequent years. These cases are not, therefore, determinative of the question before us. We expressed the view in each case that the expenditures in question constituted, to some extent, capital investments, so as to be includible in invested capital, but in each case we felt the amount of the investment had not been established. *Northwestern Yeast Co.*, 5 B. T. A. 232; *Richmond Hosiery Mills*, 6 B. T. A. 1247; affd., 29 Fed. (2d) 262; *George W. Caswell Co.*, 14 B. T. A. 15.

In *Colonial Ice Cream Co.*, *supra*, the taxpayer paid substantial sums for organization and advertising expenses and for the purchase and installation of ice cream cabinets. It attempted to treat the sum as a deferred expense, to be spread over three years. We held the amount spent for ice cream cabinets to be depreciable over the three-year life of the cabinets, and the organization expenses to be properly capitalized. Of the advertising expense, we said that "it is apparent that the benefits flowing from the advertising campaign of petitioner and the expenditures made therefor in 1920, continued through subsequent years, and to that extent may properly be regarded as a capital investment of more or less indefinite duration." We felt it was impossible to determine from the evidence to what extent the expenditures were capital in nature, and approved the respondent's denial of the deduction for that reason.

In *F. E. Booth Co.*, *supra*, the deduction of advertising expenses was sought in later years, and was denied on the ground that it was impossible to segregate the capital from the current expenses.

There is language in each of these cases from which one might infer, as petitioner does, that, had it been possible to determine from the record the proper allocation to capital and current expenditures, the capital investment would have been depreciable and the deduction allowed. The actual decisions in those cases do not, however, go so far, and we do not think they can be regarded as authority for that proposition, in spite of the language used therein.

The question before us goes one step further than the cases cited. It concerns not only the question whether the items were capital expenditures, but also, if they were, whether petitioner has a right to deduct, in a later year, a portion of such expenditures. An expenditure may be capital in character (such as an amount paid for good will) so as to be included in invested capital, but it would not follow that any amount would be allowed as a deduction by way of amortization of the expenditure or depreciation of the assets acquired by the expenditure. If we were to admit here petitioner's theory that, because it anticipated no current return on some portion of its expenditures, but expected benefits therefrom in later years, that portion has the quality of a capital investment, and if we were further to admit that petitioner has succeeded, where so many others have failed, in establishing by proof the proper proportion which the capital items bore to the total expenditures, we would still be required to find statutory authority for the deductions in some later years, since deductions are a matter of legislative grace. Assuming, for the moment, that both the fact and the amount of a capital investment had been established, as urged by petitioner, it would be necessary to determine whether the asset so acquired is depreciable under the terms of the Internal Revenue Code.

Petitioner does not name or particularly describe the property or asset which it claims to have acquired by its expenditures, except that it refers to the development of a mechanism, or method, or system of doing business through established distributors. No contention is made that petitioner acquired any tangible property except some plates used in the preparation of advertising circulars, and there is no showing that it acquired any contract rights of any kind as a result of the expenditures. There is evidence that some of the expenditures in question were made "in connection with" certain contracts, but beyond this the record gives us no further information. We are of the opinion that, except for the plates mentioned above, the cost and useful life of which we do not know, the only asset which might in any sense have resulted from the expenditures is something in the nature of good will.

Good will is not subject to depreciation allowances. *Bills Bros. Memorial Corporation*, 7 B. T. A. 1182; *R. Bryson Jones*, 17 B. T. A. 1217; *U. S. Industrial Alcohol Co.*, 42 B. T. A. 1323, 1346; affirmed on

this issue, 137 Fed. (2d) 511. See also Regulations 111, sec. 29.23 (1)–3, which provides that "No deduction for depreciation, including obsolescence, is allowable in respect of good will." Newspaper subscription lists have likewise been held not to be subject to the allowance for depreciation, on the theory that they have no definite useful life, *Toledo Newspaper Co.*, 2 T. C. 794, 809, although they are held to be capital assets. *Rose C. Pickering*, 5 B. T. A. 670.

Since the basic theory of the allowance for depreciation is the recovery by annual allowances during the life of exhaustible property of its cost or other basis, it is impossible to see any statutory basis for subjecting to the allowance property of a kind which does not exhaust itself or become less valuable with use. It is obvious from the record that the usefulness of what the petitioner acquired by the expenditures in question was not only not consumed during the five-year period, but that it will continue to serve petitioner as long as petitioner continues to do business by the method so established. This is the reason depreciation allowances have generally been denied for property such as good will, trade names and trade-marks, and the same reason justifies respondent's action in the instant case. Certainly, if assets acquired by expenditures are not depreciable, an equivalent result will not be permitted by the method of amortizing the expenditures for such assets.

The same basic reasoning prevents us from applying to the facts of this case section 43 of the code, since it can not be said that to permit, in effect, the depreciation over a period of five years of capital assets which are not shown to have depreciated at all, will "clearly reflect the income" of petitioner.

*Decision will be entered for the respondent.*