CONSOLIDATED APPAREL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20107, 24980.  Promulgated March 21, 1952.

*Joseph E. Rapkin, Esq.*, for the petitioner.
*Harold H. Hart, Esq.*, for the respondent.

1574

OPINION.

### 1. Rental Deductions.

LeMire, *Judge:* Respondent's present position is that petitioner's deduction for rental of the Berlin Arcade Building space occupied under its lease from the Trust during 1945 and 1946 is limited under section 23 (a) (1) (A) to $22,500, the amount which it was obligated to pay in those years under its lease agreement with Consolidated Mercantile Company. That company served no purpose but to hold the lease from Third-North Realty Company on the premises occupied in the Berlin Arcade Building for petitioner's benefit. It had no other assets. In view of these facts both parties have, in effect, disregarded the lease agreement, if there was any, between petitioner and Consolidated Mercantile Company, and have treated petitioner as the lessee of Third-North Realty Company.

Section 23 (a) (1) (A), Internal Revenue Code, authorizes the deduction of "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or

business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." Thus, in addition to the "ordinary and necessary" test for all business expenses, rentals must be required to be made as a condition to the continued use or possession of the premises.

Evidence was offered by the petitioner to the effect that the rentals agreed upon by petitioner and the Trust were reasonable in amount; but the crux of our question here is whether they were the amounts petitioner was required to pay for the continued use of the premises. That question depends upon all of the facts and circumstances under which the lease arrangement was made.

First, it must be kept in mind that the transactions under consideration were, for the most part, within an intimate family group and must therefore be given close scrutiny. *Higgins* v. *Smith*, 308 U. S. 473; *Helvering* v. *Clifford*, 309 U. S. 331; *Commissioner* v. *Tower*, 327 U. S. 280. The petitioner corporation, its principal stockholder, H. LeVine & Bro., Inc., Consolidated Mercantile Company, and the Trust were all under the direct control of Harry LeVine and members of his family. Except for the tax advantage to be gained by this group, there is no explanation as to why petitioner was willing in 1944 to give up the lease that still had approximately eight years more to run at a rental of $22,500 a year and accept a new 25-year lease under which its rental was more than doubled. We do not believe that petitioner would have agreed to such an arrangement in an arm's length transaction with an independent lessor.

Petitioner argues that because of its plan to expand its business it required a long term lease before making costly leasehold improvements. It is not explained why petitioner itself might not have purchased the overriding lease from Third-North Realty Company, or what necessity there was for the intervening Trust. While we do not question petitioner's right to choose this method of conducting its affairs, we must nevertheless inquire whether the consequent results justify the deduction sought. It may well be, as petitioner contends, that Third-North Realty Company would have been unwilling to grant a new lease or to extend the old lease, after the leasehold improvements had been made, but there was no longer any uncertainty about petitioner's continued occupancy after the Trust had acquired the overriding lease. The Trust and petitioner were under the same control and the beneficiaries of the Trust were all stockholders of the petitioner.

Apparently the Trust acquired the overriding lease from the Third-North Realty Company subject to the existing sublease to Consolidated Mercantile Company, and petitioner, so that the negotiations for petitioner's new lease were entirely between petitioner and the Trust.

The facts here are essentially like those in *Stanwick's, Inc.*, 15 T. C. 556, affirmed per curiam (C. A. 4, 1951) 190 F. 2d 84. There the taxpayer corporation's sole stockholder held a lease with an unexpired term of about five years on premises which he permitted his corporation to occupy without a new lease agreement. He obtained a longer term lease from the lessors at a slightly increased rental, then with their consent subleased the premises to his wife at the same rental, and the wife leased the premises back to the corporation at a greatly increased rate, based on a percentage of gross sales. We held that the excess of the rentals paid to the wife over the rentals which the husband paid to the owners was not deductible under section 23 (a) (1) (A). See also *Limericks, Inc.*, 7 T. C. 1129, affd. (C. A. 5, 1948) 165 F. 2d 483; and *Roland P. Place*, 17 T. C. 199 (on appeal, C. A. 6).

Whether or not the increased rentals which petitioner obligated itself to pay to the Trust under the new lease were more than reasonable rentals for the premises at that time we do not need to decide. In any event they were not "required  *  *  *  as a condition to the continued use  *  *  *  of property," at least for the period of the old lease, and are not deductible under section 23 (a) (1) (A). We have found above, in accordance with respondent's amended pleadings in Docket No. 24980, that the rental which petitioner was required to pay in 1945 and 1946, and is therefore entitled to deduct in those years, was not in excess of $22,500.

## 2. Officers' Compensation.

There is no single factor that determines the reasonableness of compensation paid to corporate officers. It is a question to be determined from all of the facts, including the volume of business done by the taxpayer, the experience, skill, and general qualifications of the officers, the importance of the services which the officers perform, the amount of time they devote to the business, the extent to which their services contribute to the success of the business, the standard of compensation for similar services in the industry generally, and other factors.

Where, as in the instant case, the officers and their families are in control of the corporation, their compensation is not the result of free bargaining on the sole basis of advantage to the corporation. The fact that the compensation is paid under a percentage of profits agreement of long standing does not determine the question of its reasonableness. *Oswald Co.* v. *Commissioner*, 185 F. 2d 6, certiorari denied 340 U. S. 953.

As to Harry LeVine, the percentage of profits contingency occasioned but little risk, because of the relatively large base salary of $33,000 which he was to receive in any event. The respondent has

reduced his compensation even below that figure, to $32,000. However, after careful consideration of all the evidence we have found, as stated above, that $37,500 is reasonable compensation for his services in each of the years under consideration. While there is evidence that the salaries paid to the top executives in similar businesses in that locality were considerably less than $37,500, there is also evidence that Harry LeVine's services to petitioner were of larger scope and of greater value than the services performed by these other executives. There can be no doubt as to his position as an outstanding figure in his field of merchandising.

We have also found on the evidence that $9,000 is reasonable compensation for the services performed by Leonard LeVine in each of the taxable years. That was the amount of salary paid to him in 1944 and 1945. The evidence fails to justify the increase of his salary to $11,000 in 1946.

The amounts found as reasonable compensation for these officers are exclusive of the pension trust benefits.

### 3. Abnormal Base Period Deductions.

Section 711 (b) (1) (J), Internal Revenue Code, as amended in 1941, provides that in computing average base period net income there shall be disallowed, under certain conditions, deductions taken in the base period years which were abnormal either as a class or as to amount. The deductions recognized as abnormal in amount are those in excess of 125 per cent of the average deductions of that class taken in the four preceding taxable years.

Petitioner claims that its amortization deductions on leasehold improvements in the base period years were abnormal in amount. The excess of such deductions in the base period years over the average annual deductions of that class for the preceding four years is ascertainable from the stipulated figures as set out in our findings of fact.

Respondent takes the position in his brief that petitioner has not met the requirements of section 711 (b) (1) (K) (ii). This subsection provides:

(ii) Deductions shall not be disallowed under such subparagraphs [711 (b) (1) (J)] unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

Since the "excess" here was not a consequence of an increase in petitioner's gross income (there was no increase) or decrease in other deductions (none is claimed by respondent or shown in the evidence), our queestion is whether it was the consequence of a change in the type, manner of operation, size, or condition of petitioner's business.

The leasehold improvements themselves resulted from, and in the language of the statute were a consequence of, petitioner's efforts to improve its store and thereby increase its business. The abnormal or excessive amortization deductions taken on the improvements in the base period were a direct result of the short term of the lease under which petitioner occupied the premises and the consequent necessity for the accelerated depreciation deductions on the improvements. Petitioner had no choice but to spread the cost of the improvements, other than those in the children's department, over the remaining term of the lease under which it occupied the premises. The installation of air conditioning facilities and the alterations, repairs, and improvements made on the floor space already occupied by petitioner neither resulted from nor caused any change in the type, manner of operation, size, or condition of petitioner's business. Petitioner continued to operate just as it had before the improvements were made. The changes, such as were made, were not those with which subsection (K) (ii) is concerned.

The respondent devotes considerable discussion in his brief to the question whether the costs of the improvements made in adding the children's department were, as petitioner claims, or were not, as he contends, included in the figures shown in the stipulation of facts as amortization of leasehold improvements. Petitioner claims that it did not amortize the improvements in the children's department with the other leasehold improvements for the reason that it controlled the lease on the premises occupied by that department, and, therefore, was not required or permitted to amortize the cost of those improvements over the term of the leasehold, as it did the other improvements. Respondent argues that in any event the depreciation deductions on the improvements in the children's department were of the same class and should be grouped with the deductions on other leasehold improvements, and that the abnormality, if any, was in part at least a consequence of a change in the size of the business.

We have heretofore held that for the purposes of section 711(b) (1) (J) adjustments of base period net income the classification of deductions is not limited to the statutory deduction categories of section 23, Internal Revenue Code, and that a division of the base period deductions of a general class, as between normal and abnormal deductions, is permissible. See *Green Bay Lumber Co.*, 3 T. C. 824; *Mine & Smelter Co.*, 10 T. C. 1179; and cases therein cited. Here, the abnormality in the base period amortization deductions pertains only to the improvements made on the premises subject to the short term lease; and those improvements were not a consequence of any change in the type, manner of operation, size, or condition of the business, within the meaning of subsection (K) (ii). There was no necessity

for accelerating the amortization deductions on the improvements pertaining to the children's department where the term of the leasehold was controlled by petitioner, and those deductions should not be taken into account in computing the abnormality. The improvements as a whole may have contributed to an increase in petitioner's business, certainly they were intended to do so, and the amortization deductions were, of course, the result of the improvements having been made, but that is not to say they were the consequence of any change in the type, size, etc., of the business. It is the cause of the abnormality with which the statute is concerned. *R. C. Harvey Co.*, 5 T. C. 431; *Wentworth Manufacturing Co.*, 6 T. C. 1201; *Pacific Gas & Electric Co.*, 7 T. C. 1142. For instance, if in adding its children's department or otherwise enlarging its operations petitioner had made leasehold improvements on premises which it leased for only a short term, the accelerated amortization deductions on such improvements would have been a consequence of the change.

We think that the abnormal base period amortization deductions should be disallowed, subject to the limitations prescribed by the statute.

### 4. *Contribution to Upper Third Street Advancement Association.*

The respondent has disallowed the major portion of the deduction claimed by the petitioner for 1946 of $3,750, which it pledged and paid to the Upper Third Street Advancement Association in that year. Respondent determined that since the funds were intended to be spent for advertising and promotional work over a 5-year period the deduction should be allocated on that basis. The amount which he allocated to and allowed for 1946 was $437.50.

There is no statutory requirement or authorization for such an allocation. Reasonable costs of advertising are generally allowable as business expenses. They are deductible under section 23 (a) in the year when paid, or if the taxpayer reports on an accrual basis, in the year when the liability is incurred. Petitioner made its returns on an accrual basis. It accrued in its books and deducted in its 1946 return not the full amount of its subscription to the association but only the amount paid in that year. That amount at least was properly accrued and deducted as an expense of that year.

Section 43, Internal Revenue Code, to which respondent refers in his brief, does not authorize the spreading of depreciation deductions in respect of the cost of advertising or the acquisition of any nontaxable capital asset. See *A. Finkenberg's Sons, Inc.*, 17 T. C. 973; *X-Pando Corporation*, 7 T. C. 48; *Carey Machine & Supply Co.* v. *Hofferbert*, decided January 25, 1950 (D. C. Md.).

The respondent has cited no case in support of his position and we find none. He was in error, we think, in disallowing any portion of the $3,750 payment claimed by the petitioner in its return.

## 5. Penalty.

The respondent has determined against the petitioner a 25 per cent penalty for 1945 because of its failure to file a proper return for that year. The return which petitioner did file was found to be deficient in that it was signed by petitioner's president alone and not with another officer, as required by the statute.

Section 52, Internal Revenue Code, provides that any corporation subject to tax shall make a return "sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer." Although Harry LeVine signed the return as president of the company, he was in fact both president and treasurer. Literally then, the return was signed by the petitioner's president and treasurer. Perhaps Harry LeVine should have signed twice, once as president and again as treasurer, but that, we think, is not a serious defect. In our opinion the return as filed substantially complied with the requirements of the statute as to verification. See *Edwin J. Schoettle Co.*, 13 B. T. A. 950; *Indiana Rolling Mills Co.*, 13 B. T. A. 1141; *J. F. Anderson Lumber Co.*, 15 B. T. A. 475; *Ethel D. Co.*, 27 B. T. A. 25, affd. 70 F. 2d 761.

*Decisions will be entered under Rule 50.*