SANITARY FARMS DAIRY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

O. CARLYLE AND EMILY A. BROCK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49511, 51909.   Filed December 14, 1955.

*Vincent C. A. Scully, Jr., Esq.*, and *Sidney B. Gambill, Esq.*, for the petitioners.

*George J. Rabil, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The cost of a big game hunt in Africa does not sound like an ordinary and necessary expense of a dairy business in Erie, Pennsylvania, but the evidence in this case shows clearly that it was and was so intended. *Rodgers Dairy Co.*, 14 T. C. 66. It provided extremely good advertising at a relatively low cost. The planning of the trip, the departure, news of the progress of the hunt, the return of the hunters, and the presentation and naming of the live animals was reported free by the newspapers as news, to the advantage of the Dairy which was recognized throughout as the sponsor. An advertising agent expressed it as follows:

To a newspaper looking for copy, a big game hunter would get top billing. It appeals to the imagination. There is a little bit of the hunter in all of us, a little of the adventurer, I should say, a little hunting for adventure. When that big game hunter is a prominent member of the newspaper's community, taking a very active and prominent part in the business, civic, fraternal life of the community, then his desirability as copy has increased considerably. It is my opinion that Mr. and Mrs. Brock fill that requirement admirably.

The films were exploited successfully by the Dairy. Credit was given to it at each showing. "The people were invited and greeted as customers and friends of the Dairy. The film was presented to them as a dividend for their good will and their patronage. The Brocks [there in person] were presented as executive officers of the Dairy." "Any facility that can hold the attention of an audience for an hour and a half, to two hours, sometimes three, and impress them favorably [with] the product and the makers of that product, is a highly valuable advertising property." The quotes are from the testimony of the advertising agent who favored the trip and introduced the Brocks at the showing of the films. The trophies came into the museum in later years, because it took time to process, ship, and mount them, but when they arrived they too provided good advertising for the Dairy. Costs incident to the preparation, shipping, and mounting of the trophies were paid in later years and are not involved herein.

The evidence shows that advertising of equal value to that here involved could not have been obtained for the same amount of money in any more normal way. The Commissioner allowed $1,200 of the safari expense of 1950 and does not seek to have that changed but contends, as an alternative to complete disallowance, that the remainder of the 1950 expenditures, if legitimate advertising expense, should be spread over later years. There is no pleading to support any amortizing of the amount. Advertising expense is normally deductible in the year paid or accrued. *Consolidated Apparel Co.*, 17 T. C. 1570, affd. 207 F. 2d 580; *A. Finkenberg's Sons, Inc.*, 17 T. C. 973; *X-Pando Corporation*, 7 T. C. 48; *Colonial Ice Cream Co.*, 7

B. T. A. 154; *Carey Machinery & Supply Company* v. *Hofferbert*, 42 A. F. T. R. 1281, 50–2 U. S. T. C. par. 9421. The portion of the cost of the safari accrued and paid in 1950 was deductible in whole in that year as a relatively small part of the advertising program carried on by the Dairy.

No part of that cost is taxable to the Brocks as personal travel and pleasure expense of theirs. They admittedly enjoyed hunting, but enjoyment of one's work does not make that work a mere personal hobby or the cost of a hunting trip income to the hunter. There is evidence that this trip represented hard work on the part of the Brocks, undertaken for the benefit of the Dairy, rather than as frolic of their own. The $375 item goes in favor of the Commissioner for lack of proof.

The Commissioner's one affirmative contention, that an additional amount should be disallowed because a part of the safari cost, must fail for reasons given above. Furthermore, he failed to prove the amount involved. His other affirmative contention is that the salaries of Brock's son and daughter were not deductible expenses because they did not furnish services commensurate with the amounts paid them. He has not sustained his burden of proof on this issue. The record does not show the type of services rendered or the time either one spent as an employee. The son was young and in high school, but he had time to work and, for all that has been shown, may have furnished services worth the amount paid him. The daughter spent only a few months in Erie during 1950, but again, it could be that she furnished sufficient services to justify the amount paid to her. Suspicion is not an adequate substitute for evidence to aid the Commissioner on this issue.

*Decisions will be entered under Rule 50.*