ROBERT F. & PAMELA E. BAKER, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 21409-91
United States Tax Court
T.C. Memo 1994-283; 1994 Tax Ct. Memo LEXIS 280; 67 T.C.M. (CCH) 3114; June 20, 1994, Filed *280 Decision will be entered under Rule 155. Robert F. Baker, pro se. For respondent: Charlotte A. Mitchell. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' [1] Federal income tax: Additions to Tax Section
Section
Section
Year
Deficiency
[2] 6651(a) 6653(a)(1)
6653(a)(2)
1985
$ 20,896 $ --   $ 1,045 *
1986
1,383
346
-- --
1987
13,170
3,293
-- --
Additions to Tax Section
Section
Section
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1985
$ 20,896
$ -- --
$ 5,224
1986
1,383
69 *
-- 1987
13,170
659 *
-- * 50 percent of the interest due on the portion
of the underpayment attributable to
negligence. Respondent determined that the entire
amount of the underpayment was
attributable to negligence.
*281 The issues remaining for decision are: [3]
(1) Is Mr. Baker entitled for each of the years at issue to reduce the gross receipts and to deduct from the gross income of his concrete pumping business amounts in excess of those allowed by respondent? We hold that he is not. *282 (2) Is Mr. Baker entitled for 1986 to a casualty loss deduction in excess of the amount allowed by respondent? We hold that he is to the extent stated herein. (3) Is Mr. Baker liable for 1986 and 1987 for the addition to tax for failure to file timely the return for each such year? We hold that he is. (4) Is Mr. Baker liable for each of the years at issue for the additions to tax for negligence? We hold that he is. (5) Is Mr. Baker liable for 1985 for the addition to tax for a substantial understatement of income tax? We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated by Mr. Baker and respondent and are so found. At the time the petition was filed, Mr. Baker resided in Modesto, California, and Ms. Baker resided in Tracy, California. 1. General Background
Petitioners filed joint Federal income tax returns for the years at issue. Their returns for 1986 and 1987 were filed late on March 1, 1989. During the years at issue, Mr. Baker, who was self-employed, operated a concrete pumping business, called "Baker's Concrete Pumping" (BCP). In October 1986, a fire occurred at Mr. Baker's house (October 1986 fire). 2. Unreported Income
*283 Gross receipts for BCP in the amount of $ 21,662.26 were reported in Schedule C of petitioners' 1985 return (1985 Schedule C). During 1985, deposits in the amount of $ 70,805 were made into an account Mr. Baker maintained at Central Bank in Newark, California (Central Bank account). Respondent determined that $ 49,143 of income with respect to those deposits had not been reported in the 1985 Schedule C. [4]
Gross receipts for BCP in the amount of $ 40,262.72 were reported in Schedule C of petitioners' 1986 return (1986 Schedule C). During 1986, deposits in the amount of $ 86,317.35 were made into the Central Bank account. During November and December 1986, a total of $ 10,353.85 was deposited into an account maintained in the name of BCP at Bank of the West in Santa Clara, California (Bank of the West *284 BCP account). Of the total deposited, $ 3,000 was transferred at the end of 1986 from another account of Mr. Baker. The Bank of the West BCP account was overdrawn and had a deficit of $ 64.58 at the end of 1986. Respondent did not obtain records for those accounts prior to the issuance of the notice. She therefore did not determine that Mr. Baker had unreported income for 1986 with respect to any of those deposits. Gross receipts for BCP in the amount of $ 55,755.68 were reported in Schedule C of petitioners' 1987 return (1987 Schedule C). During 1987, Mr. Baker made deposits in the amount of $ 100,654 into the Bank of the West BCP account. During 1987, Mr. Baker maintained a second account at Bank of the West; amounts deposited into that account during 1987 were transferred from other accounts and are not includible in Mr. Baker's income for that year. Respondent determined that $ 44,899 of income with respect to the deposits into the Bank of the West BCP account had not been reported in the 1987 Schedule C. 3. Claimed Reduction of Gross Receipts and Deductions From Gross Income Relating to BCP
a. Claimed Cost of Goods Sold and/or of Operations
In computing *285 BCP's gross income in the 1985 Schedule C, Mr. Baker showed $ 1,907 as the cost of goods sold and/or of operations, calculated as follows: Beginning Inventory
$ 14,652.00 Purchases
1,737.00 Cost of Labor
2,284.00 Materials and Supplies
2,973.00 Other Costs
47.00 Less Ending Inventory
(19,786.00)
Cost of Goods Sold and/or  of Operations   $ 1,907.00  Respondent allowed the cost of goods sold and/or of operations claimed in the 1985 Schedule C. In computing BCP's gross income in the 1986 Schedule C, Mr. Baker showed $ 27,899.47 as the cost of goods sold and/or of operations, calculated as follows: Beginning Inventory
$ 19,786.00 Cost of Labor
2,671.50 Materials and Supplies
18,198.87 Less Ending Inventory
(12,756.90)
Cost of Goods Sold and/or  of Operations   $ 27,899.47 Respondent allowed the cost of goods sold and/or of operations claimed in the 1986 Schedule C. In computing BCP's gross income in the 1987 Schedule C, Mr. Baker showed $ 40,544.07 as the cost of goods sold and/or of operations, calculated as follows: Beginning Inventory
$ 12,756.90 Cost of Labor
9,565.63 Materials and Supplies
28,668.54 Less Ending Inventory
(10,447.00)
Cost of Goods Sold and/or  of Operations   $ 40,544.07 *286 Respondent allowed the cost of goods sold and/or of operations claimed in the 1987 Schedule C. b. Claimed "Returns and Allowances"
In computing BCP's gross income for 1985, 1986, and 1987, Mr. Baker reduced BCP's reported gross receipts for each of those years by "returns and allowances" in the amounts of $ 1,169, $ 2,650, and $ 3,819, respectively. Respondent disallowed those claimed reductions of BCP's gross receipts by "returns and allowances". c. Claimed Deductions
In the 1985 Schedule C, Mr. Baker claimed the following deductions from BCP's gross income: Type of Expense
Amount
Advertising
$ 329.00   Bad Debts from Sales or Services
1,273.00
Bank Service Charges
180.00
Car and Truck Expenses
2,695.00
Insurance
2,275.00
Laundry and Cleaning
125.00
Legal and Professional Services
125.00
Office Expense
204.00
Rent on Business Property
2,850.00
Repairs
2,142.00
Travel and Entertainment
406.00
Utilities and Telephone
1,287.00
Total Deductions Claimed  $ 13,891.00
In the 1986 Schedule C, Mr. Baker claimed the following deductions from BCP's gross income: Type of Expense
Amount
Advertising
$ 232.24  Bank Service Charges
150.00
Car and Truck Expenses
2,623.79
Insurance
656.50
Legal and Professional Services
125.00
Rent on Business Property
3,000.00
Repairs
3,280.29
Total Deductions Claimed  $ 10.067.82
*287 Respondent allowed all the foregoing expense deductions for 1985 and 1986 except those for insurance and "rent on business property". In the 1987 Schedule C, Mr. Baker claimed the following deductions from BCP's gross income: Type of Expense
Amount
Bank Service Charges
$ 150.00   Car and Truck Expenses
2,175.00
Legal and Professional Services
1,075.00
Office Expense
85.00
Rent on Business Property
3,000.00
Repairs
3,820.97
Supplies
3,656.37
Utilities and Telephone
2,110.00
Total Deductions Claimed  $ 16,072.34
Respondent allowed all the foregoing expense deductions for 1987 except those for supplies and "rent on business property". 4. Claimed Casualty Loss Deduction for 1986
In petitioners' 1986 return, Mr. Baker reported a casualty loss of "personal use property" in the amount of $ 2,000, and he deducted $ 1,689.14 as a casualty loss in that return. Respondent determined that Mr. Baker was not entitled to $ 1,160 of the claimed casualty loss deduction. OPINION Mr. Baker has the burden of establishing error in respondent's determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), *288 affg. 79 T.C. 714 (1982). Mr. Baker presented no evidence and made no argument [5] regarding respondent's determinations that certain deposits into the Central Bank account and the Bank of the West BCP account during 1985 and 1987, respectively, constituted gross receipts of BCP for those years that should have been included in the respective 1985 and 1987 Schedules C. [6] We therefore treat him as having conceded the correctness of those determinations. [7] See Rybak v. Commissioner, 91 T.C. 524, 566 (1988). *289 Nor did Mr. Baker introduce any records substantiating the reduction of BCP's gross receipts or the deductions from its gross income that were shown in the 1985 and 1986 Schedules C and that are still in dispute. He claimed that no records were available because they were destroyed in the October 1986 fire. Mr. Baker did introduce canceled checks (canceled checks or checks) drawn in 1987 on the Bank of the West BCP account and on other accounts maintained with Bank of the West by him and by him and Ms. Baker. He also testified about those checks. The checks and Mr. Baker's testimony were offered in an effort to establish that he is entitled for 1987 to a reduction of BCP's gross receipts and deductions from its gross income in excess of the amounts allowed by respondent. Mr. Baker did not call any other witnesses to appear on his behalf, and he offered no explanation for not doing so. We may therefore presume that the testimony of other witnesses would not have been favorable to his position on the issues presented. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); *290 see Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). With respect to the documentary evidence introduced by Mr. Baker relating to the 1987 items in dispute, we note that, except for the names of the payees and the dates of the checks, the checks generally do not contain information that assists us in identifying the nature or purpose for which they were issued. Mr. Baker attempted to identify the purpose of each check by means of a check journal (1987 check journal) in which he classified each check drawn on the Bank of the West BCP account. That journal, which simply summarizes information contained in the checks themselves, was not prepared contemporaneously with the incurrence of the expenditures for which the checks were issued. Instead, Mr. Baker prepared it at the insistence of the Internal Revenue Service, apparently sometime during the audit of the returns at issue. The Court informed Mr. Baker at trial, and we restate here, that the 1987 check journal as well as other summaries of checks or expenses prepared by him are not, standing alone, sufficient to establish that he is entitled to reduce BCP's gross receipts by, or to deduct from its *291 gross income, the amounts shown therein. With respect to Mr. Baker's testimony relating to the 1987 items in dispute, we note that his testimony was general and conclusory. In these circumstances, we are not required to, and do not, accept his self-serving testimony. Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; see Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Tokarski v. Commissioner, supra.
The principal issues for decision relate to whether Mr. Baker is entitled to reduce BCP's gross receipts by claimed costs of goods sold and/or of operations and to deduct from its gross income claimed expenses. With respect to the claimed reduction of BCP's gross receipts by the cost of goods sold and/or of operations, section 1.61-3(a), Income Tax Regs., provides in pertinent part that in certain businesses "gross income" means total sales less the cost of goods sold. The United States Court of Appeals for the Ninth Circuit, the court to which an *292 appeal would lie, has noted that "The very definition of 'gross income' has been thought to mandate the exclusion of certain amounts (e.g., the cost of goods sold) from * * * [gross receipts], even in the absence of specific statutory authority for such exclusion." Max Sobel Wholesale Liquors v. Commissioner, 630 F.2d 670, 671 (9th Cir. 1980), affg. 69 T.C. 477 (1977). Because a taxpayer's cost of goods sold and/or of operations is not a deduction from gross income, it is not subject to the limitations of section 162. See id. at 671-672; Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). Nonetheless, a taxpayer must establish a connection between the cost of goods sold and/or of operations claimed and the activity giving rise to gross receipts before it may be taken as an offset against those receipts. See Shriver v. Commissioner, 85 T.C. 1, 8 (1985), affd. without published opinion (7th Cir. 1986); Schellenbarg v. Commissioner, 31 T.C. 1269, 1277 (1959), affd. in part, revd. in part on *293 other grounds 283 F.2d 871 (6th Cir. 1960). With respect to the claimed deduction from BCP's gross income of certain expenses, section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Lee v. Commissioner, 723 F.2d 1424, 1426 (9th Cir. 1984), affg. T.C. Memo. 1981-26; Hearn v. Commissioner, 309 F.2d 431, 431 (9th Cir. 1962), affg. 36 T.C. 672 (1961). In general, an expense is ordinary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495 (1940). Ordinarily, an expense is necessary if it is helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); *294 Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Even if an expense is ordinary and necessary, it is deductible under section 162 only to the extent it is reasonable in amount. E.g., United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967). In deciding whether an expense is ordinary and necessary within the meaning of section 162, courts generally have focused on the existence of a reasonably proximate relationship between the expense and the taxpayer's business and the primary motive or purpose for incurring it. E.g., Greenspon v. Commissioner, 229 F.2d 947, 954-955 (8th Cir. 1956), affg. on this issue and revg. in part 23 T.C. 138 (1954); Henry v. Commissioner, 36 T.C. 879, 884 (1961); Larrabee v. Commissioner, 33 T.C. 838, 841-843 (1960). In general, where an expenditure is primarily associated with profit-motivated purposes, and personal benefit can be said to be distinctly secondary and incidental, *295 the expenditure may be deducted under section 162. E.g., International Artists, Ltd. v. Commissioner, 55 T.C. 94, 101 (1970); Sanitary Farms Dairy, Inc. v. Commissioner, 25 T.C. 463, 467-468 (1955); Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 73 (1950). Conversely, if an expenditure is primarily motivated by personal considerations, no deduction for it will be allowed. E.g., Henry v. Commissioner, supra; Larrabee v. Commissioner, supra.A taxpayer's general statement that his or her expenses were incurred in pursuit of a trade or business is not sufficient to establish that the expenses had a reasonably direct relationship to that trade or business. Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969). A taxpayer is required to maintain records that are sufficient to establish the amount of his or her gross income and deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Under certain circumstances, where a *296 taxpayer establishes his or her entitlement to a deduction, but does not establish the amount of the deduction, we are permitted to estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We may also in appropriate circumstances estimate a taxpayer's cost of goods sold and/or of operations. See Estate of Stein v. Commissioner, 25 T.C. 940, 957 (1956), affd. per curiam sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958). However, there must be sufficient evidence in the record to permit us to conclude that a deductible expense or a cost of goods sold and/or of operations was incurred in at least the amount allowed. Otherwise, "relief to the taxpayer would be unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); see Luman v. Commissioner, 79 T.C. 846, 859 (1982). Furthermore, in estimating the amount allowable, we may bear heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544. *297 With these general principles in mind, we turn to the issues presented. 1. Claimed Reduction of Gross Receipts and Deductions from Gross Income Relating to BCP
a. Claimed Schedule C Items for 1985 and 1986
Mr. Baker introduced no evidence concerning the disputed reduction of gross receipts [8] and deductions from gross income relating to BCP that he is claiming for 1985 and 1986. He asserts that his records for those years were destroyed in the October 1986 fire and that he cannot obtain any records for those years. Mr. Baker must establish the cost of goods sold and/or of operations that he seeks to offset against the gross receipts of BCP in calculating its gross income for 1985 and 1986. See Shriver v. Commissioner, supra. He also bears the burden of establishing entitlement to the deductions *298 he is claiming under section 162. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). That burden includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The inability of a taxpayer to produce evidence does not affect his or her burden of proof. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). Instead, the type of evidence that may be offered to establish a fact is altered. Id. at 1124-1125. Mr. Baker made no effort to offer credible secondary evidence to substantiate the disputed Schedule C reduction of BCP's gross receipts and deductions from BCP's gross income for 1985 and 1986. He therefore has failed to carry his burden with respect to those matters. See Burnet v. Houston, 283 U.S. 223, 228 (1931). Accordingly, respondent's determinations as to those items are sustained. b. Claimed Schedule C Items for 1987
i. Claimed Items Reported in the 1987 Schedule C and Disallowed in the *299 Notice
Mr. Baker has not shown and does not argue that any of the canceled checks that he introduced into evidence establish that he is entitled to reduce BCP's gross receipts by, or to deduct from its gross income, the amounts claimed in the Schedule C for 1987 that remain in dispute. [9] He therefore has failed to establish his entitlement to those items. [10] Accordingly, respondent's determinations as to those matters are sustained. *300 ii. Claimed Items Allegedly Not Reported in the 1987 Schedule C
Although Mr. Baker did not argue at trial that the evidence he introduced substantiates the amounts claimed in the 1987 Schedule C, he did contend that that evidence entitles him to reduce the amount of BCP's gross receipts for 1987 by amounts incurred during that year for, inter alia, labor and materials that. he allegedly did not claim in the 1987 Schedule C. Mr. Baker also argued at trial that the evidence adduced entitles him to deduct from BCP's gross income for 1987 amounts incurred during that year for, inter alia, car and truck expenses, expenses for repairs, and utility expenses that allegedly were not claimed in the 1987 Schedule C. The evidence on which Mr. Baker relies to support his position consists of his own testimony, canceled checks that he asserts document the amounts he is claiming, and summaries of the canceled checks that he prepared. We find the evidence adduced by Mr. Baker to be generally questionable and not determinative of his entitlement to the amounts claimed for 1987. By way of illustration, Mr. Baker testified in a general and conclusory manner that the payments represented *301 by the checks were related to BCP. He made no attempt to identify the nature or purpose of the payments represented by those checks. While the parties stipulated various documents that appear to be BCP work proposals and contracts made during 1987, Mr. Baker made no effort to relate the payments represented by the canceled checks to the jobs referred to in those proposals and contracts. We were unable to discern from reviewing the checks the purposes for which most of them were written, since very few of them identify the purposes for which they were drawn. Some appear on their face to be personal in nature, such as checks payable to grocery stores and day care providers, or to relate to capital expenditures, such as mortgage payments on Mr. Baker's residence. Many of the checks that Mr. Baker claims represent payment of costs associated with BCP, such as those payable to individuals, auto repair shops, and rental firms, have no evident connection with BCP's business. Based on our review of the entire record, we conclude that (1) none of the checks establishes that Mr. Baker is entitled for 1987 to any deductions from BCP's gross income in excess of those allowed by respondent; *302 and (2) while Mr. Baker has satisfied us that he is entitled for 1987 to reduce BCP's gross receipts by the cost of materials used in that business, he has not established the amount of the allowable reduction for that year. We therefore shall estimate the amount allowable for that year under the so-called Cohan rule, bearing in mind that any estimate we make should weigh heavily against Mr. Baker because he is responsible for the deficiencies in the proof required to show the correct amount of the reduction. [11] See Cohan v. Commissioner, 39 F.2d at 543-544; Estate of Stein v. Commissioner, 25 T.C. at 957. *303 We find that Mr. Baker is entitled for 1987 to reduce the amount of BCP's gross receipts by $ 25,395 as a cost of materials. However, based on the information submitted to respondent, respondent allowed Mr. Baker to reduce BCP's gross receipts by $ 28,668.54 as a cost of materials, which is the amount claimed in the Schedule C for that year. There is nothing in the record to show, or even to suggest, that the amount ($ 25,395) that we have found on the instant record as a reduction of BCP's gross receipts for 1987 is not already included in the amount allowed by respondent. Consequently, we conclude that Mr. Baker has not established that BCP's gross receipts for 1987 should be reduced by more than the amount allowed by respondent. On the present record, no reduction in BCP's gross receipts or deductions from BCP's gross income in excess of those allowed by respondent are to be taken into account in computing Mr. Baker's net profit from BCP for 1987. 2. Claimed Casualty Loss Deduction for 1986
Mr. Baker disagrees with respondent's disallowance of a portion ($ 1,160) of a claimed casualty loss deduction for 1986. He claims that his concrete pump was wrecked in a traffic *304 accident and that the amount allowed by respondent does not reflect the full amount of loss he suffered. [12] Although he claimed in the return for that year and at trial that the amount of the loss was $ 2,000, he offered no documentation to corroborate that claim. Respondent contends that her determination disallowing a portion of the claimed casualty loss deduction is the result of the purely mathematical application of the provisions *305 of section 165(h). That section limits the amount of any otherwise allowable casualty loss deduction. Respondent does not otherwise dispute the allowability of the casualty loss deduction claimed by Mr. Baker. Under the present circumstances, the parties are directed to calculate the amount of casualty loss deduction allowable under section 165 as part of the Rule 155 computation. If that calculation shows that Mr. Baker is entitled under section 165 to a deduction in excess of the amount permitted by respondent, such additional deduction will be allowed. 3. Additions to Tax
Respondent determined that Mr. Baker is liable for (1) the addition to tax imposed by section 6651(a)(1) for failure to file timely petitioners' 1986 and 1987 returns, (2) the additions to tax for each of the years at issue for negligence or disregard of rules or regulations, and (3) the addition to tax for 1985 for a substantial understatement of income tax. a. Section 6651(a)(1)
Section 6651(a)(1) imposes an addition to tax for failure to file timely a tax return. In the instant case, petitioners' 1986 and 1987 returns were filed on March 1, 1989, well after the due dates prescribed by section *306 6072(a). [13] The addition to tax does not apply if the failure is due to reasonable cause, and not to willful neglect. Sec. 6651(a)(1). Mr. Baker presented no evidence and made no argument to show that the failure to file timely the 1987 return was due to reasonable cause, and not willful neglect. Mr. Baker suggested at trial that the October 1986 fire destroyed petitioners' records and prevented the timely filing of their 1986 return. Unavailability of records does not necessarily establish reasonable cause for failure to file timely. See Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1344 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). A taxpayer is required to file timely based on the best information available and to file thereafter an amended return if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). *307 Nothing in the record suggests that petitioners applied for an extension of time to file their 1986 return. Mr. Baker did not show what, if any, efforts he made to obtain from other sources information concerning his income and expenses for that year. Nor did he establish that he could not have prepared a timely return with a reasonable degree of accuracy based on the records still available to him. It seems that Mr. Baker made no attempt to reconstruct his records or to prepare a return for 1986 until the time of the audit of the years at issue began in 1988. Under these circumstances, we conclude that Mr. Baker has not demonstrated that the failure to file timely the 1986 return was due to reasonable cause, and not to willful neglect. On the instant record, we sustain respondent's determination that Mr. Baker is liable for 1986 and 1987 for the additions to tax for failure to file timely returns for those years. b. Section 6653(a)
For 1985 and for 1986 and 1987, section 6653(a)(1) and section 6653(a)(1)(A), respectively, impose an addition to tax equal to five percent of the entire underpayment if any part of it was due to negligence or disregard of rules or regulations. *308 If that addition to tax applies, for 1985 and for 1986 and 1987, section 6653(a)(2) and section 6653(a)(1)(B), respectively, impose a further addition to tax in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); see Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Mr. Baker contends that the underpayment for each year at issue resulted from an inadequate system of accounting and poor bookkeeping. Failure by a taxpayer to keep adequate records may justify imposition of the additions to tax for negligence. See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Marcello v. Commissioner, 380 F.2d 509, 511 (5th Cir. 1967), *309 affg. T.C. Memos. 1964-303 and 1964-304; Crocker v. Commissioner, supra at 917. Failure to maintain adequate records also indicates disregard of the rules or regulations that require a taxpayer to keep permanent records sufficient to establish, inter alia, the taxpayer's gross income and deductions. Crocker v. Commissioner, supra.
Another indication that Mr. Baker is liable for the additions to tax for negligence for 1985 and 1987 is that he omitted large amounts of income from the returns for those years. [14] See Anders v. Commissioner, 68 T.C. 474, 493 (1977). Based on the present record, we *310 sustain respondent's determination that Mr. Baker is liable for each of the years at issue for the additions to tax for negligence. c. Section 6661(a)
If there is a substantial understatement of income tax for a taxable year, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to that understatement. An understatement exists where the amount of tax shown on the taxpayer's return is less than the amount required to be shown on his or her return. Sec. 6661(b)(1)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Sec. 6661(b)(1)(A). Excepting items attributable to tax shelters, the amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Mr. Baker has not attempted to show that there was substantial authority for the items contributing to the underpayment for 1985 or that the facts affecting the tax treatment of those items were adequately disclosed. [15] *311 See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). His only explanation for the underpayment for 1985 is that his record keeping system was poor. Such a reason is insufficient to carry his burden of establishing that respondent's determination under section 6661(a) is wrong. Accordingly, if, after the Rule 155 computation, there is a substantial understatement of Mr. Baker's income tax for 1985 within the meaning of section 6661(b)(1)(A), respondent's determination under section 6661(a) will be sustained for that year. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. At trial, respondent conceded all deficiencies and additions to tax with respect to Pamela E. Baker (Ms. Baker) on the ground that she qualified as an innocent spouse under sec. 6013(e), I.R.C.↩ Consequently, all issues for decision concern only Robert F. Baker (Mr. Baker). Ms. Baker did not appear at trial and did not sign the stipulation of facts.
2. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent determined that Mr. Baker received $ 1,501 of unemployment compensation in 1985 that was not reported in the return for that year. Mr. Baker offered no evidence at trial to rebut respondent's determination, and he does not otherwise dispute it. We therefore consider this issue to have been abandoned by Mr. Baker. See Rybak v. Commissioner,91 T.C. 524, 566↩ n.19 (1988).
4. The amount determined in the notice of deficiency (notice) was $ 50,066, but respondent conceded that, due to a mathematical error, the amount of unreported income determined in the notice was overstated by $ 923.↩
5. Mr. Baker chose not to file any briefs.↩
6. In fact, a summary which Mr. Baker prepared to show the calculation of his taxable income for 1987 incorporates without adjustment the amount respondent determined was deposited in the Bank of the West BCP account during that year.↩
7. We note that the United States Court of Appeals for the Ninth Circuit, the court to which an appeal would lie, requires that respondent come forward with some substantive evidence that a taxpayer received unreported income before she may rely on the presumption that her determination is correct. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an order of this Court; Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982), affg. per curiam an order of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672↩ (1977). Based on the instant record, we find that respondent has satisfied this requirement.
8. The only item reducing gross receipts claimed in the 1985 and 1986 returns that remains in dispute is the amount claimed in each of those returns for "returns and allowances".↩
9. The only item reducing gross receipts claimed in the 1987 return that remains in dispute is the amount claimed for "returns and allowances".↩
10. Among the items Mr. Baker claimed as deductions from gross income was $ 3,000 of "rent on business property". This amount equals one-fifth of the mortgage payments made on his residence during 1987 -- the portion of that residence that he claims to have used during that year in connection with BCP. Deductions may be allowable only for depreciation and expenses incurred to maintain a residence in which a business is operated, see Gino v. Commissioner, 60 T.C. 304, 313-314 (1973), revd. per curiam on other grounds 538 F.2d 833↩ (9th Cir. 1976), and not for a portion of a mortgage payment on a residence where a business is conducted. Moreover, sec. 280A allows such deductions only if its requirements are satisfied. Mr. Baker has not, and does not argue that he has, established that he satisfied those requirements. On the present record, respondent's determination disallowing the deduction claimed by Mr. Baker for "rent on business property" is sustained.
11. In making our determination of the amount of the allowable reduction for 1987 of BCP's gross receipts for materials, we relied on all checks that appear to have been paid during 1987 to suppliers of materials. Although Mr. Baker contended at trial that $ 40,955.85 was spent for such materials, the total amount of those checks is only $ 39,069.↩
12. Mr. Baker testified at trial that the casualty loss occurred with respect to his concrete pump. In petitioners' 1986 return, a casualty loss of property that was not identified in the return was reported in the portion of Form 4684 used for claiming casualty losses with respect to "personal use property", rather than for losses with respect to "business and income-producing property". On the instant record, we do not accept Mr. Baker's uncorroborated, self-serving testimony and cannot conclude that Mr. Baker erroneously classified the property giving rise to the claimed casualty loss.↩
13. There is no suggestion in the record that petitioners obtained extensions of time to file their 1986 and 1987 returns.↩
14. The failure to file timely a return without reasonable cause also may be evidence that an underpayment of tax was attributable to negligence or disregard of rules or regulations. Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50↩ (5th Cir. 1990).
15. Mr. Baker makes no claim that respondent should have waived the addition to tax under sec. 6661(a) pursuant to sec. 6661(c).↩